**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Todd Eisner as the Personal Representative of the Estate of Sandra Ellen Eisner, and on behalf of the Wrongful Death Beneficiaries,<br><br>     Plaintiff,<br> v.<br><br>Charleston County, Charleston County Sheriff's Office, Kristin Graziano, in her official capacity as the Sheriff of Charleston County and Alan Michael Kendall,<br><br>     Defendants. | Case No. 2:23-cv-0217<br><br>**ORDER AND OPINION** |

  This matter is before the Court on Defendant Alan Michael Kendall's Motion to Dismiss. (Dkt. No. 17). Plaintiff responded in opposition (Dkt. No. 23), and Defendant Kendall replied (Dkt. No. 24). For the reasons set forth below, the Court grants-in-part and denies-in-part Defendant Kendall's motion.

  Also before the Court is Plaintiff's Motion to Strike Defendant Kendall's reply. (Dkt. No. 25). Defendant Kendall responded in opposition to Plaintiff's motion (Dkt. No. 26), and Plaintiff replied (Dkt. No. 27). For the reasons set forth below in Section III.A., the Court grants Plaintiff's motion.

**I. Background**

  This case arises from a car accident that occurred when Defendant Deputy Kendall, responding to a 911 call, drove his police vehicle at a high rate of speed into a car in which Decedent Sandra Eisner was a passenger. The collision took the life of Ms. Eisner and the driver of the vehicle Sunny Brower.

1

The complaint alleges that on January 3, 2021 at approximately 12:13 p.m. Charleston County dispatch received a 911 call from Marquell Woodfield. (Dkt. No. 1-1, ¶ 11). The complaint alleges that Mr. Woodfield was complaining that his mother and aunt were upset with him and that he was requesting an officer to be sent to his location. (*Id.*, ¶¶ 11-13). The complaint further alleges that the call "was in no way shape or form any type of an emergency." (*Id.*, ¶ 17).

The complaint further alleges that Defendant Kendall, a deputy on duty for the Charleston County Sheriff's Department, responded he was en route and that "without justification or exigent circumstances, chose to go 'Code 3,' which is an 'Emergency Run.'" (*Id.*, ¶ 22). Under a Code 3, an officer may "may exceed the maximum speed limit if he does not endanger life or property." S.C. Code § 56-5-760(B). The complaint alleges that Defendant Kendall exited the Mount Pleasant neighborhood he was in and made a right on Six Mile Road, a residential street with a 35-mph speed limit, and began driving at speeds of up to 85 mph. (*Id.*, ¶¶ 29-30). The complaint further alleges that Defendant Kendall turned right onto US Highway 17 North and drove at speeds exceeding 100 mph as he weaved around heavy traffic and between lanes. (*Id.*, ¶ 31).

The complaint alleges that while Defendant Kendall was driving on Highway 17 Decedent was making a left turn onto Highway 17 from Bee Hive Road. (*Id.*, ¶ 36). The complaint alleges that Defendant Kendall—driving at 130 miles per hour—crashed into Decedent's car as Decedent was making a legal left turn onto Highway 17 and that the collision caused Decedent's and his passenger's death. (*Id.*, ¶¶ 38-40).

Plaintiff, as personal representative of the Estate of Eisner, filed the complaint against Charleston County, Charleston County Sheriff's Office, Kristin Graziano, in her official capacity as the Sheriff of Charleston County, and Allan Michael Kendall. (*Id.* at 9-17). Against Defendant Kendall, Plaintiff asserts the following four causes of action: (1) negligence, (2) violation of

2

Decedent's substantive due process rights pursuant to 42 U.S.C. § 1983, (3) survival claim, and (4) wrongful death claim. (*Id.*) Defendant Kendall filed the instant motion to dismiss for failure to state a claim. (Dkt. No. 17). The motion has been fully briefed and is now ripe for review.

## II. Standard

A Rule 12(b)(6) motion tests the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The "court must accept as true all of the allegations contained in a complaint," but cannot accept mere "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Rather, a plaintiff must allege facts "sufficient to state all the elements of her claim," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), and sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. In other words, the well-pleaded facts must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

## III. Discussion

### A. Extrinsic Documents and Plaintiff's Motion to Strike Defendant Kendall's Reply

Before turning to the merits of the parties' arguments, the Court must determine what documents may be considered in its Rule 12(b)(6) analysis. Defendant Kendall, in his reply, relies on the dispatch incident detail report (Dkt. No. 24-1), an audio recording of the 911 call (Dkt. No. 24-2), and Defendant Kendall's police car's dash cam video leading up to the accident (Dkt. No. 24-3). None of those materials were attached to the Complaint. Based on the procedural posture

3

of the motion to dismiss, Plaintiff moved to strike Defendant Kendall's reply brief as improper. (Dkt. No. 25).

A court's evaluation of a motion to dismiss is generally limited to a review of the allegations of the complaint itself and any documents attached or incorporated into the complaint. *Goines v. Valley Community Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Considering extrinsic documents during the pleading stage improperly converts a motion to dismiss into a motion for summary judgment. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). "This conversion is not appropriate when the parties have not had an opportunity to conduct reasonable discovery." *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) (citing *E.I. du Pont de Nemours*, 637 F.3d at 448; Fed. R. Civ. P. 12(b), 12(d), and 56).

Courts may consider documents outside the complaint at the Rule 12(b)(6) stage when (1) the document was attached to the motion to dismiss, and is clearly integral to, and was relied upon in, the complaint and (2) the plaintiff does not dispute the document's authenticity. *Blakenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts will not consider extrinsic documents attached to replies. *See, e.g.*, *Sadler v. Pella Corporation*, 146 F. Supp. 3d 734, 754 n.9 (D.S.C. 2015).

Here, the documents relied on by Defendant Kendall were attached to the reply, not the motion to dismiss. Because the first element is not met, the Court need not consider whether the extrinsic documents were integral to the complaint. The Court, therefore, refuses to consider the extrinsic documents in deciding this motion to dismiss. And because the entirety of Defendant Kendall's reply relies on the extrinsic documents, the Court also refuses to consider any portion Defendant Kendall's reply brief at this stage. Plaintiff's motion to strike (Dkt. No. 25) is granted.

Accordingly, the Court will only consider the allegations in the Complaint in analyzing Defendant's motion to dismiss.

### B. 42 U.S.C. § 1983

Although § 1983 is not itself a source of substantive rights, it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional or statutory rights. 42 U.S.C. § 1983; *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Here, the federal right that plaintiff seeks to vindicate stems from the substantive component of the Fourteenth Amendment's Due Process Clause.

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)) (internal citation omitted).

#### 1. Standard of Culpability

There are two culpability standards that dictate whether conduct sufficiently "shocks the conscience" to establish a due process violation. *See Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Defendant Kendall argues that the "intent to harm" standard controls here, and Plaintiff argues that the lower "deliberate indifference" standard applies.

To determine which standard to apply, the court must evaluate whether "actual deliberation is practical." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998). In *Lewis*, the Supreme Court concluded that the intent to harm standard controls when an officer is involved in a high-speed chase because the officer must make instantaneous judgments with little or no opportunity to reflect or deliberate. *Lewis*, 523 U.S. at 846. For less restrained scenarios, like when a police officer drives a vehicle in a non-emergency, non-pursuit context, courts have found that the

5

deliberate indifference standard applies. *Dean v. McKinney*, 976 F.3d 407, 415 (4th Cir. 2020) ("[W]hen an officer is able to make unhurried judgements with time to deliberate, such as in the case of a non-emergency, deliberate indifference is the applicable culpability standard for substantive due process claims involving driving decisions."); *Corbera v. Taylor*, 2:21-cv-01988, 2022 WL 17741089, at *5 (E.D. Cal. Dec. 16, 2022) ("Based on *Lewis*, Ninth Circuit precedent, and multiple on-point circuit decisions, the court concludes that the deliberate indifference standard applies to substantive due process claims premised on a police officer's driving in a non-emergency, non-pursuit context."). "A determination as to which of these standards of culpability—'intent to harm' or 'deliberate indifference'—applies requires 'an exact analysis of context and circumstances before any abuse of power is condemned as conscience shocking.'" *Dean*, 976 F.3d at 414 (quoting *Lewis*, 523 U.S. at 850).

The Court now considers whether Plaintiff has sufficiently pled facts indicating that Defendant Kendall did not face an emergency and had time to deliberate on his actions such that he was deliberately indifferent. Here, Plaintiff alleges that the call was "in no way shape or form any type of emergency" and that there "was nothing in the call that required an urgent response by any officer who responded." (Dkt. No. 1-1, ¶¶ 17-18). Plaintiff also alleged that dispatch told Kendall that the call did not involve drug use, the caller did not claim to be in any danger, and no one associated with the call required medical attention. (*Id.*, ¶ 32). Plaintiff also alleged that the two other responding officers did not believe the call to be an emergency because they responded Code 1 where an officer is required to obey all traffic laws. (*Id.*, ¶¶ 20, 28). These allegations suggest that Defendant Kendall had no reason to believe the call was an emergency.

Plaintiff also alleges that Kendall responded to the call at 12:19 pm and the fatal car collision took place at 12:23 pm, giving him a full 4 minutes to deliberate. (*Id.*, ¶¶ 22, 39). This

6

tends to show sufficient time to deliberate. *See Dean*, 976 F.3d at 416 (trier of fact could find that officer had "ample time to consider" his actions during two minutes and fifteen seconds that elapsed between notification that the call was not an emergency and the collision); *Browder*, 787 F.3d at 1082 (trier of fact could find that officer had adequate time to deliberate during eight minutes that elapsed between the time he started speeding and the collision).

The Court therefore finds that, at this stage, the deliberate indifference standard applies because Plaintiff has alleged facts tending to show that Taylor was facing a non-emergency situation in which he had time to deliberate on his actions.

### 2. Deliberate Indifference

The Court turns next to consider whether Defendant Kendall's conduct, based on the facts viewed in the most favorable light to Plaintiff, could reflect deliberate indifference to a "great risk of serious injury to someone in Plaintiff's position." *Green v. Post*, 574 F.3d 1294, 1303 (10th Cir. 2009).

The "deliberate indifference" standard imposes liability where the evidence shows (1) the officer subjectively recognized a substantial risk of harm, and (2) the officer subjectively recognized that his actions were inappropriate in light of that risk. *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). "'A factfinder may infer that an officer knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Likewise, a trier of fact may conclude that the officer's response to the risk was so clearly inadequate as to justify an inference that the officer realized his response to the risk was inappropriate under the circumstances. *Id.*

The complaint alleges that Defendant Kendall's began driving at 85 mph through a Mt. Pleasant neighborhood. (Dkt. No. 1-1, ¶¶ 29-30). The complaint further alleges that Defendant

7

Kendall turned right onto US Highway 17 North and drove at speeds exceeding 100 mph as he weaved around heavy traffic and between lanes. (*Id.*, ¶ 31). In addition to attempting dangerous maneuvers between lanes, the complaint further alleges that Defendant Kendall eventually reached speeds of over 130 mph while traveling down Highway 17. (*Id.*, ¶¶ 38-39). The Complaint alleges that Defendant Kendall drove in this behavior after dispatch told him the call involved no danger. (*Id.*, ¶ 32).

The Court finds that Plaintiff has plausibly alleged that Defendant Kendall recognized the substantial risk to bystanders and other drivers around him and recognized that his actions were inappropriate in light of that risk.

Accordingly, the Court concludes that Plaintiff has properly pled its § 1983 claim against Defendant Kendall.

### C. Qualified immunity

The Supreme Court has established a two-step analysis for qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, the court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1991)); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

As found above in Section III.B, the complaint plausibly alleges a constitutional violation; therefore, the first element is met. The Court now considers whether Defendant Kendall's alleged conduct violated clearly established law. The specific question before the Court is whether a reasonable officer in Defendant Kendall's position would have believed that driving a police

vehicle driving at excessive speeds responding to a completely benign 911 call with no threats of violence or harm was permissible under established legal standards.

"To be clearly established, the right violated must be 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *McKinney*, 976 F.3d at 417 (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004)). This determination is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances. *Id.* "'Clearly established' does not mean that 'the very action in question has previously been held unlawful,' but it does require that, 'in the light of pre-existing law the unlawfulness [of the official's conduct] must be apparent.'" *Owens*, 372 F.3d at 279 (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Public officials can be on notice that their conduct violates established law even in novel factual circumstances, so long as the law provided fair warning that their conduct was wrongful. *See Williamson v. Stirling*, 912 F.3d 154, 187 (4th Cir. 2018).

In *Browder*, an off-duty officer was sued when he finished his shift but used his lights and drove at high speed on personal business, ultimately causing a fatal traffic accident. *Browder*, 787 F.3d at 1077. Then-judge Gorsuch concluded that proof of intent-to-harm is not required in cases where an officer "isn't pursuing any emergency or any official business at all" and "no one has called for his aid." *Id.* at 1081. Significantly, *Browder* noted that "as of 2006, it was clearly established a police officer *could* be liable under the Fourteenth Amendment for driving in a manner that exhibits a conscience-shocking deliberate indifference to the lives of those around him." *Id.* at 1083 (internal quotation marks omitted).

In *Dean*, the Fourth Circuit considered a Section 1983 lawsuit brought against a police officer who lost control of his vehicle on a curved and unlit section of the road, resulting in him

9

crossing the center line and striking the plaintiff's sedan nearly head-on. *Dean*, 976 F.3d at 412. The officer was traveling over eighty-three miles per hour—at least thirty-eight miles per hour over the forty-five miles-per-hour speed limit. *Id.* Though the officer had activated his emergency lights and siren to proceed to the location of another officer, a few seconds later he was radioed to cancel the emergency and proceed in a non-emergency response where officers must abide by all traffic laws, resulting in him deactivating his emergency lights and siren. *Id.* The collision in *McKinney* occurred approximately two minutes after the radioed cancellation of the emergency response—meaning almost two minutes after he turned his siren and emergency lights off. *Id.* The Fourth Circuit noted that though there was no case directly on point to inform its analysis, "core constitutional principles set forth in numerous cases lead [the court] to the conclusion that [the plaintiff's] substantive due process right was clearly established." *Id.* at 418–19 (citing *Lewis*, 523 U.S. at 851; *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986); *Green v. Post*, 574 F.3d 1294 (10th Cir. 2009); *Browder*, 787 F.3d 1076; *Sauers v. Borough of Nesquehoning*, 905 F.3d 711 (3d Cir. 2018)).

Therefore, in *Browder* and in *Dean*, the Tenth and Fourth Circuits, respectively, concluded that the conduct of an officer traveling at a high rate of speed even though he was not in pursuit of a suspect or responding to an emergency should be assessed under a deliberate indifference standard. *Browder*, 787 F.3d at 1077; *Dean*, 976 F.3d at 419. The fact that there is relatively scant caselaw imposing liability in these specific circumstances does not deprive officers of "fair warning that their conduct . . . was wrongful." *Williamson*, 912 F.3d at 187. Indeed, "some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder*, 787 F.3d at 1082.

The Court concludes, therefore, that in January 2021, it was clearly established that an officer driving at excessive speeds, up to 130 mph, responding to a nonviolent incident could be subject to liability under the Fourteenth Amendment for deliberate indifference to a substantial risk of harm to those around him. A reasonable officer in Defendant Kendall's position would have realized such conduct was unlawful. Therefore, Defendant Kendall is not entitled to qualified immunity.

### D. South Carolina Tort Claims Act ("SCTCA")

Defendant Kendall argues that Plaintiff's negligence, wrongful death, and survival claims against Defendant Kendall in his individual capacity are barred pursuant to the SCTCA. (Dkt. No. 17 at 20). Plaintiff did not respond to this argument in her opposition.

The SCTCA acts as a partial waiver of South Carolina's sovereign immunity. *See* S.C. Code Ann. § 15-78-20. The SCTCA governs all tort claims against state governmental entities and is the exclusive civil remedy available in an action against a state governmental entity or its employees, with a few exceptions not raised here. *See id.*; *Huggins v. Metts*, 640 S.E.2d 465, 466 (S.C. Ct. App. 2006). "Under the Tort Claims Act, an employee of a governmental entity who commits a tort while acting within the scope of his official duty is generally not liable, and the plaintiff must sue the governmental agency itself." *Roberts v. City of Forest Acres*, 902 F. Supp. 662, 671 (D.S.C. 1995) (citing S.C. Code Ann. § 15–78–70(a)).

Here, Plaintiff's negligence, wrongful death, and survival claims against Defendant Kendall in his individual capacity are barred. Charleston County Sherriff's Department is the proper party for those claims. Thus, the Court dismisses those claims against Defendant Kendall. *See Faulkner v. York Cnty. Sch. Dist.*, No. 0:21-CV-02090-JMC, 2022 WL 673684, at *5 (D.S.C.

Mar. 7, 2022) (dismissing, inter alia, gross negligence claim against a state employee where the state employer was the proper party for that claim pursuant to S.C. Code Ann. § 15-78-70(c)).

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion to Strike (Dkt. No. 25). The Court also **GRANTS-IN-PART** and **DENIES-IN-PART** Defendant Kendall's Motion to Dismiss (Dkt. No. 17). Claims 1, 4, and 5 against Defendant Kendall are dismissed.

  s/Richard M. Gergel
Richard Mark Gergel
United States District Judge

September 13, 2023
Charleston, South Carolina